

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JRS:ALK/KRA
F. #2017R00089

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2024

By E-mail and ECF

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Roger Morales
     Criminal Court Case No. 24-453 (BMC)

Dear Judge Levy:

   The government submits this letter in support of its application for an order of detention for the defendant Roger Morales, also known as "Crazy," "Ciclon," and "Cyclone." The defendant is charged with murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1), for the June 5, 2011, murder of Norman Mizzell at his home in Queens, New York. The defendant committed this crime as a member of the violent transnational criminal organization La Mara Salvatrucha, also known as "MS-13," and faces a sentence of up to life imprisonment.[1] Because the defendant presents both a clear risk of flight and a danger to the community, the Court should order his detention pending trial.

  I. Background of the Charged Crime

    a. Relevant Offense Conduct

   The government proffers the following facts concerning the offense conduct. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government may proceed by proffer in a detention hearing). Proof of these and other relevant facts in the case will come from, among other things: (1) crime scene evidence; (2) autopsy evidence; (3) firearms and ammunition recovered from the defendant and his co-conspirators; (4) photographs

---

[1] The defendant is not eligible for the death penalty or a mandatory life sentence because he was a minor at the time of the charged murder.

and other information concerning the defendant and his co-conspirators from social media accounts; and (5) photographs of the defendant's numerous MS-13 tattoos.

### i. The Defendant's Affiliation with MS-13

MS-13 operates through chapters, or "cliques," throughout the United States. The enterprise, which is active in Queens, Long Island, and elsewhere, engages in a range of racketeering activity, including murder, robbery, witness tampering and retaliation, and narcotics trafficking. Gang membership is considered a lifetime commitment, with only rare exceptions that allow individuals to leave the gang. Clique members often carry out directives from regional, national, and international MS-13 leaders, including orders to kill witnesses, rival gang members, and potential cooperating or defecting MS-13 members. MS-13 cliques assist each other in carrying out violent crimes, harboring fugitives, acquiring firearms, distributing narcotics, and other criminal activity. At the time of the charged murder, the defendant was a member of the Centrales Locos Salvatruchas ("CLS") clique of MS-13.

### ii. Murder of Norman Mizzell

The charge in this Indictment arises from the June 5, 2011, murder of Norman Mizzell. The defendant's connection to the victim began when he and other MS-13 members purchased marijuana from the victim at his home in Queens, New York. When the defendant and other MS-13 members returned several days later to purchase more marijuana, they found that the victim was away, and then broke into his home and took his belongings.

After the victim confronted the defendant and others over the burglary, they decided to kill him. The defendant and his co-conspirators obtained a firearm from another clique and enlisted the help of another MS-13 member who needed to commit a murder to regain standing in the gang. Then, on the night of June 5, 2011, the defendant and his co-conspirators traveled to the victim's home, where they shot him several times through a window into his bedroom during a feigned late-night marijuana purchase. The victim was found dead in his home the next day.

### b. Relevant Procedural History

On November 6, 2024, a grand jury returned an indictment charging the defendant with murder in-aid-of racketeering for the murder of Mizzell. The defendant is expected to be arraigned before Your Honor this afternoon.

## II. Legal Standard

In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." Id. "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." Id.

If the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order" a defendant detained.  18 U.S.C. § 3142(e)(1).  The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community.  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Whether detention is sought based on flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis:

1. The nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm";

2. The weight of the evidence against the defendant;

3. The history and characteristics of the defendant; and

4. The nature and seriousness of the danger posed by the defendant's release.

See 18 U.S.C. § 3142(g).  In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III.   Argument

   a.   The Defendant Is Eligible for Detention Under 18 U.S.C. § 3142(f)

The offense with which the defendant has been charged is a crime of violence, see § 3142(f)(1)(A); carries a maximum sentence of life imprisonment, see § 3142(f)(1)(B); and involves the possession and use of a firearm, see § 3142(f)(1)(E).  Given the applicable penalties, and the history of MS-13 members in tampering with witnesses, the defendant also presents both a serious risk of flight, see § 3142(f)(2)(A), and of obstruction of justice, see § 3142(f)(2)(B).

   b.   The Court Should Detain the Defendant

No bail package will protect the community from the danger posed by defendant or will mitigate the risk of his flight or obstruction of justice.  Each of the factors set forth in 18 U.S.C. § 3142(g) weigh heavily in favor of the pre-trial detention of the defendant.

First, as set forth above, the nature and circumstances of the crimes charged are extremely and self-evidently serious, as they involve murder — specifically, the premeditated murder of Norman Mizzell at his home in Queens, New York.  See United States v. Zhang, 55 F.4th 141, 150 (2d Cir. 2022) (finding that the first factor "weighed substantially in favor of a finding of future dangerousness" in murder-for-hire case; "It was entirely appropriate for the court to focus on the fact that the charged offense involved murder, which by its nature involves violence and bespeaks danger to others.").

Moreover, the defendant faces a life sentence — and an advisory Guidelines range of life imprisonment.[2] These penalties give the defendant a significant incentive to flee. See, e.g., Zhang, 55 F.4th at 151 ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence."); United States v. Williams, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020) (holding that an estimated Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee"); United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [defendant's] Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee.").

The seriousness of the danger posed by the defendant's release should not be underestimated in light of his association with MS-13, an extraordinarily violent criminal enterprise that engages in acts of violence, including murder, against those perceived as enemies. There is a real risk that, if allowed to remain at liberty, the defendant would attempt to intimidate, harm, or murder those believed to be witnesses in the government's case. See 18 U.S.C. § 3142(f)(2); United States v. Suarez, No. 16-CR-403 (JFB), 2020 WL 7699663, at *5 (E.D.N.Y. Dec. 28, 2020) ("There are numerous instances of Long Island MS-13 members attempting to interfere with the judicial process, including retaliating against individuals believed to have cooperated with law enforcement authorities."); see also United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (preponderance of the evidence standard applies to determination of flight and obstruction).

Second, as described above, the weight of the evidence against the defendant is extremely strong. That evidence includes, among other things, crime scene evidence, including ballistics evidence; an autopsy of the victim; firearms and ammunition recovered from the defendant and his co-conspirators; photographs and other information concerning the defendant and his co-conspirators from social media accounts; and photographs of the defendant's numerous MS-13 tattoos. See Zhang, 55 F.4th at 150-51 ("It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail. . . . [And] [w]here, as here, the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight.").

Third, the defendant's history and characteristics weigh in favor of detention. As noted above, the defendant committed the charged murder on behalf of MS-13, a violent transnational criminal enterprise whose members and associates have previously been convicted in this District of murder, obstruction of justice, assault, and several other violent crimes. See Williams, 2020 WL 4719982, at *3 (defendant's gang membership weighed against release). In addition, the defendant has sustained serious convictions in the past, including for attempted burglary and attempted criminal possession of a weapon. See Mercedes, 254 F.3d at 437 (finding that the "district court committed clear error in failing to credit the government's proffer with respect to [defendant's] dangerousness" because, among other factors, "[i]n addition to the

---

[2] Under United States Sentencing Guideline Section 2A1.1, the base offense level for premeditated murder is 43. Even without accounting for the defendant's criminal history, this results in a Guidelines range of life imprisonment.

4

crime charged here, [the defendant] has twice been convicted of weapon possession — one felony conviction, and one misdemeanor conviction.").

The defendant has also been the subject of more recent arrests for domestic violence charges and domestic incident reports. Information concerning several of these incidents remains sealed, and the government currently is not aware of the disposition of the remaining incidents. However, the information available to the government suggests that the defendant has engaged in physical violence against family members on multiple occasions. For example, according to NYPD complaint reports, in April 2019, the defendant punched an individual who appears to be his father in the face and grabbed and squeezed his neck, and in doing so violated an order of protection. See id. at 437-38 ("A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others.").

Fourth, the risk of further violence and flight by the defendant is severe, given both the significant penalties he faces, as well as his association with MS-13. Courts have consistently held that where a defendant is associated with a violent criminal organization, no conditions — even stringent conditions of home confinement — are sufficient to protect the community. See United States v. Destine, No. 20-CR-293 (WFK), 2022 WL 2181453, at *4 (E.D.N.Y. June 16, 2022) ("Courts have consistently held no conditions are sufficient to protect the community in the face of membership in a violent criminal organization."); United States v. Irizarry, No. 17-CR-283 (LAP), 2020 WL 1705424, at *3 (S.D.N.Y. Apr. 8, 2020) ("Even under normal conditions, electronic monitoring does not suffice to restrain violent criminals who, like [the defendant], are members of organized gangs.").[3]

---

[3] See also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("[E]lectronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology"[.]); accord United States v. Brennerman, 705 F. App'x 13, 16 (2d Cir. 2017); United States v. Dono, 275 F. App'x 35, 37 (2d Cir. 2008); United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 2528922, at *3 (E.D.N.Y. May 15, 2020) ("Nor are the defendant's proposed measures — that he be kept on home confinement and monitored by pretrial services — sufficient to eliminate the danger to the community.").

5

IV. <u>Conclusion</u>

For the foregoing reasons, the government respectfully requests that the Court enter an order of detention with respect to the defendant.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/ Kamil R. Ammari
        Kamil R. Ammari
        Jonathan Siegel
        Anna L. Karamigios
        Assistant U.S. Attorney
        (718) 254-6075

cc:    Clerk of Court (BMC) (by ECF)
      Defense counsel (by E-Mail and ECF)
      United States Pretrial Services (by E-Mail)